## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAJAT DAWAR and EBONY MORRISON individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>   v.<br><br>SOVENA USA, INC.,<br><br>                         Defendant. | Case No.: 1:24-cv-09106<br><br>Hon. Jeremy C. Daniel |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Rajat Dawar and Ebony Morrison ("Plaintiffs"), on behalf of themselves and all others similarly situated, brings this class action against Sovena USA, Inc. ("Sovena USA" or "Defendant") based on Defendant's false and deceptive advertising and labeling of its avocado oil products. Plaintiffs make the following allegations based on the investigation of their counsel, and on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on their personal knowledge.

## <u>INTRODUCTION</u>

1. During the statute of limitations period, Defendant marketed, labeled, advertised, and sold Olivari Avocado Oil (the "Class Products") to consumers with packaging that prominently and unequivocally represents that the oil is "100% Pure [] Avocado Oil" (the "*Avocado Oil Representation*").

2. Reasonable consumers believe, based on the *Avocado Oil Representation*, that the Class Products are 100% avocado oil and do not contain any other oils. However, unbeknownst to consumers, the Class Products are adulterated with other oils.

3. Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Class Products during the

statute of limitations period, for violations of Illinois' Consumer Fraud Act §§ 815 ILCS 505/1, *et seq.*, California's False Advertising Law, Bus. & Prof. Code §§ 17500 & 17501 et seq., California's Unfair Competition Law, Bus. & Prof. Code § 17200, et seq., California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq., breach of express warranty, negligent misrepresentation, intentional misrepresentation, quasi-contract, and fraud .

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

5.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in the State of Illinois, have sufficient minimum contacts with the State of Illinois, and/or otherwise intentionally availed itself of the State of Illinois, through the promotion, marketing, and sale of the Class Products in this State (including in this District) to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff Dawar purchased the Class Product in this District.

## PLAINTIFFS

7.     Plaintiff Dawar is a citizen and resident of the United States and the State of Illinois. He currently resides in Northfield, Illinois.

8.     On January 11, 2024, Plaintiff purchased a bottle of Olivari 100% Pure Avocado Oil from Sam's Club while residing in Northfield, Illinois. Plaintiff saw and relied on the

*Avocado Oil Representation* in making his purchase. Plaintiff reasonably believed, based on the *Avocado Oil Representation*, that he was purchasing 100% avocado oil, and this belief was a fundamental part of his decision to purchase the Class Product. Had Plaintiff known that the Class Product was adulterated with other oils and was not 100% avocado oil, he would not have purchased it, or he would have paid less for it. Thus, Plaintiff has suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as alleged herein.

9.     Plaintiff Dawar will be unable to rely on the Class Products' *Avocado Oil Representation* in the future as he will be unable to determine the true contents absent scientific testing, and so will be unable to purchase the Class Products in the future, although he would like to. However, Plaintiff remains interested in purchasing 100% avocado oil products, intends on purchasing them in the future, and would consider purchasing Defendant's Class Products in the future if Defendant ensured that the *Avocado Oil Representation* was accurate and truthful.

10.     Plaintiff Morrison is a citizen and resident of the United States and the State of California. She currently resides in Los Angeles, California.

11.     On June 23, 2024, Plaintiff Morrison purchased a bottle of Olivari 100% Pure Avocado Oil from Sam's Club while residing in Long Beach, California. Plaintiff saw and relied on the *Avocado Oil Representation* in making her purchase. Plaintiff reasonably believed, based on the *Avocado Oil Representation*, that she was purchasing 100% avocado oil, and this belief was a fundamental part of her decision to purchase the Class Product. Had Plaintiff known that the Class Product was adulterated with other oils and was not 100% avocado oil, she would not have purchased it, or she would have paid less for it. Thus, Plaintiff has suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as alleged herein.

12.     Plaintiff Morrison will be unable to rely on the Class Products' *Avocado Oil Representation* in the future as she will be unable to determine the true contents absent scientific testing, and so will be unable to purchase the Class Products in the future, although she would like to. However, Plaintiff remains interested in purchasing 100% avocado oil products, intends on purchasing them in the future, and would consider purchasing Defendant's Class Products in the future if Defendant ensured that the *Avocado Oil Representation* was accurate and truthful.

**No Adequate Remedy at Law.**

13.     Plaintiff Morrison seeks damages, and in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

14.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. As one example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages. No such requirements exist to obtain restitution. Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

15.     In addition, to obtain a full refund as damages, Plaintiff must show that the Class Product she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Class Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain that obtaining a refund in equity.

16.     Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

4

17. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Class Products from Defendant again in the future if she could feel sure that Defendant's avocado oil is actually unadulterated and not contaminated with other oils. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's products are not falsely or deceptively labeled. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

## **DEFENDANT**

18. Sovena USA, Inc. is a New York corporation with its headquarters and principal place of business in Rome, New York. Sovena USA is registered to do business in the State of New York.

19. Defendant is directly involved in the manufacturing, sale, and distribution of Class Products, and is responsible for the advertising, marketing, trade dress, and packaging of the Class Products. Defendant developed, marketed, and sold the Class Products during the class period.

## **FACTUAL ALLEGATIONS**

**A.    The *Avocado Oil Representation* is False and Deceptive**

20. The Class Products consist of Olivari 100% Pure Avocado Oil. The Class Products are generally sold in 34 fluid ounce bottles. The *Avocado Oil Representation* is prominently displayed on the front label in the same manner on all Class Products, as depicted in the following representative images:



21.     As can be seen from the above images, the *Avocado Oil Representation* conveys the unequivocal message that the Class Products are 100% avocado oil.

22.     Moreover, the front label depicts an avocado cut open, adding to the effect of the representation.

23.     This message is further reinforced by the ingredient list on the Class Products' back label, which lists "avocado oil" as the only ingredient:



24. Defendant does not disclose anywhere that the Class Products are adulterated with other oils. Thus, consumers reasonably believe the Class Products are 100% avocado oil based on the *Avocado Oil Claim.*

25. The Class Products are not 100% avocado oil. To the contrary, based on Plaintiffs' investigation, which includes testing and analysis of the Class Products performed by third party laboratories, and review of independent testing performed by researchers at University of California at Davis ("UC Davis"), the fatty acid profiles of the Class Products show that the Class Products are ***definitely not*** 100% avocado oil, and are indeed adulterated with other oils. Thus, the *Avocado Oil Claim* is false and deceptive.

**B. The *Avocado Oil Representation* is Material**

26. The *Avocado Oil Representation* is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Class Products.

27. Avocado oil is well-known to be one of the healthiest cooking oils. For example, studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure, LDL cholesterol, as well as reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels.[1] It is also high in monounsaturated fat, which is considered more heart healthy than saturated fat while being slightly more stable than the polyunsaturated fats typically found in vegetable oils.[2] Avocado oil is also a high demand cooking oil because it has the highest smoke point of all plant-based cooking oils.[3] Each of these qualities, among others, motivate consumers to pay a premium price for avocado oil as compared to other cooking oils like canola, peanut, safflower, soybean, sunflower, and others.

28. Regardless of whether consumers believe avocado oil is superior to other oils or possesses the aforementioned qualities, the issue of whether the Products contain 100% avocado oil or are adulterated is material to reasonable consumers. Simply put, consumers of the Class Products reasonably expect to know what type of oil they are consuming.

29. Consumers purchased, and continue to purchase, the Class Products in part because the *Avocado Oil Representation* conveys the unequivocal message that it is 100% avocado oil. Plaintiffs and Class members would have paid less for the Class Products, or would not have purchased them at all, if not for the *Avocado Oil Representation*. Therefore, Plaintiffs and Class members have suffered a financial injury in the form of paying a price premium that the Class Products command in the market as a result of Defendant's representations that the Class Products are 100% avocado oil.

---

[1] https://www.healthline.com/nutrition/9-avocado-oil-benefits#TOC_TITLE_HDR_4 (last visited on February 20, 2024).
[2] https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil (last visited on February 20, 2024).
[3] *Id.*

### C. Background on Fatty Acids and Standards of Identity

30.     Fatty acids are the chemical building blocks of fats. Each type of cooking oil contains certain proportions of the various fatty acids. These proportions are expressed in the form of ranges, effectively creating a "fingerprint" identity of reference ranges unique to the oil.

31.     While samples of the same type of oil may have different precise proportions of a given fatty acid, and samples of different types of oils may have the same proportion of a given fatty acid, the "fingerprint" contains reference *ranges* for all fatty acids, and it provides a standard within which *all authentic samples of a specific oil* will fit.

32.     This unique "fingerprint" is codified by the Food and Agriculture Organization of the United Nations ("FAO") in the Codex Alimentarius[4] ("Codex"), which is a collection of internationally recognized standards, codes, and guidelines related to food production, labeling, and safety. In addition to providing standards and guidelines for industry, Codex codifies the "fingerprints" (*i.e.*, fatty acid profiles) which are used as the standard of identity for the various oils.

33.     From the FAO webpage: "The Codex Alimentarius is a collection of internationally adopted food standards and related texts presented in a uniform manner. These food standards and related texts aim at protecting consumers' health and ensuring fair practices in the food trade. The publication of the Codex Alimentarius is intended to guide and promote the elaboration and establishment of definitions and requirements for foods to assist in their harmonization and in doing so to facilitate international trade."[5]

---

[4] Literally, "Food Code" in Latin.

[5] Codex Alimentarius, *About Codex Alimentarius*, FAO/WHO, https://www.fao.org/fao-who-codexalimentarius/about-codex/en/ (last visited on Feb. 26, 2025).

34.     Standards for foods are proposed, evaluated, and adopted at meetings of the Codex Alimentarius Commission ("CAC"). The CAC is made up of 189 members representing 188 countries and the European Union. The working group tasked with understanding the chemical properties of avocado oil, which would be operationalized as a means for identifying authentic samples of avocado oil, was chaired by Mexico and co-chaired by the United States of America.[6] The working group members included United States government officials, global health organization officials, and representatives from food industry and trade groups. The working group solicited and received input from subject matter experts from around the world on the chemical characteristics of avocado oil.

35.     The working committee's purpose was to "define a 100% authentic and or pure avocado oil, while promoting an inclusive proposal that considers the characteristics of avocado oil produced in the various regions of the world." The working group aimed to address "the problem of adulteration that is intended to be avoided as much as possible."[7]

36.     The standards developed by the CAC are used to ensure that consumers receive "a safe, wholesome food product free from adulteration, correctly labelled and presented."[8]

37.     The 47th Session of the Codex Alimentarius Commission ("CAC47") was held in Geneva, Switzerland from November 25 through November 30, 2024. During CAC47, the CAC evaluated the Codex "fingerprint" for avocado oil and voted to adopt it as a means for identifying authentic samples of avocado oil (*i.e.,* only avocado oil). This standard was unanimously adopted at the close of CAC47, on November 30, 2024.

---

[6] https://www.fao.org/fao-who-codexalimentarius/sh-proxy/en/?lnk=1&url=https%253A%252F%252Fworkspace.fao.org%252Fsites%252Fcodex%252FMeetings%252FCX-709-28%252FWorking%2BDocuments%252Ffo28_04e.pdf (last visited on March 12, 2025).

[7] *Id*.

[8] *Id*.

38.     CAC47 specifically undertook the task of establishing and adopting a standard for avocado oil because "recent growth in demand for healthier food products globally has seen a high value market develop for avocado oil. International agreement on the criteria included in the standard will help protect consumer health, facilitate trade, and provide a basis for determining the authenticity of the product."[9]

### D.     The Class Products are Not 100% Avocado Oil

39.     Plaintiffs' counsel commissioned independent laboratory testing of samples of the Class Products. The third-party laboratory analyzed the fatty acid profiles of the Class Products and compared them with the fatty acid "fingerprints" of avocado oil as explained above. The testing revealed that the fatty acid profile of the Class Products does not match the "fingerprint" corresponding to avocado oil.

40.     Accordingly, the laboratory testing revealed that the Class Products are not 100% avocado oil, contrary to the *Avocado Oil Representation*.

### E.     Recent Reporting Further Confirms that the Class Products are Not 100% Avocado Oil

41.     A group of scientists at the University of California at Davis ("UC Davis") recently conducted a study testing the content of a variety of avocado oils sold in retail stores. The study tested the fatty acid levels in the various products.

42.     On August 27, 2024, The Washington Post, relying on the UC Davis study, reported that "adulteration is rampant in the avocado oil industry, and many people are being misled by some of the nation's largest retail chains."[10]

---

[9] FAO, *FAO-WHO Codex Alimentarius Commission adopts new standards*, FAO Newsroom, https://www.fao.org/newsroom/detail/fao-who-codex-alimentarius-commission-adopts-new-standards-47session/en (last visited on Feb. 26, 2025).

[10] Anahad O'Connor and Aaron Steckleberg, *Why your avocado oil may be fake and contain other cheap oils*, The Washington Post,

43.     The article discussed, in detail, the findings of the UC Davis study. The UC Davis study was published in *Food Control*, an official peer reviewed scientific journal of the European Federation of Food Science and Technology and the International Union of Food Science and Technology.[11, 12]

44.     The UC Davis researchers found that nearly two-thirds of the 36 bottles they tested were adulterated.[13]

45.     The UC Davis testing reported in the *Washington Post* article revealed that many oils labeled and sold as avocado oil actually contained low value oils such as sunflower, safflower, canola, and soybean oils, among "other oils that could not be identified[,]" since "[t]hese oils look similar to refined avocado oil but are cheaper to make."[14]

46.     The authors of the article requested comment from the U.S. Food and Drug Administration ("FDA") in response to their findings. The FDA responded that "high value oils" such as avocado oil "are potential targets for economically motivated adulteration." "Economically motivated adulteration" (also known as "food fraud") occurs when someone "adds a substance to a food to make it appear better or of greater value," like "when manufacturers add a cheaper [oil] to an expensive [oil]" but sell the product as only the expensive oil.[15]

---

https://www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/ (last visited Aug. 30, 2024).
[11] Hilary S. Green and Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, 116 Food Control 107328 (Oct. 2020).

[12] Hilary S. Green and Selina C. Wang, *Purity and quality of private labelled avocado oil*, 152 Food Control 109837 (Oct. 2023).

[13] *Id*.

[14] *Id*.

[15] https://www.fda.gov/food/compliance-enforcement-food/economically-motivated-adulteration-food-fraud

47.     While the UC Davis study (as originally published) did not reveal the brands and companies associated with the problematic oils, the researchers ***did*** provide this information to *The Washington Post* for inclusion in the August 27, 2024 article discussing the study. Among other tainted products from various brands, the study found that the Class Products are adulterated with "high oleic sunflower or safflower oil[.]"[16]

48.     Thus, based on the independent laboratory testing commissioned by Plaintiffs, and separate testing performed by scientists at UC Davis, the Class Products do not conform to the Codex standard for avocado oil. The Codex standard has since been endorsed and adopted by the Food and Agriculture Organization of the United Nations to conclusively establish that a product is adulterated. Accordingly, the Class Products are not 100% avocado oil, and they are adulterated with other oils, contrary to the *Avocado Oil Claim.*

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

> **Nationwide Class**
>
> All natural persons who purchased at least one of the Class Products in the United States within the applicable statute of limitations period
>
> **Illinois Subclass**
>
> All natural persons who purchased at least one of the Class Products in the State of Illinois within the applicable statute of limitations period.
>
> **California Subclass**
>
> All natural persons who purchased at least one of the Class Products in the State of California within the applicable statute of limitations period.

---

[16] O'Connor and Steckleberg, *Why your avocado oil may be fake*, *supra.*

13

50.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

52.     Plaintiff Dawar is a member of the Nationwide and Illinois classes.

53.     Plaintiff Morrison is a member of the Nationwide and California classes.

54.     <u>Numerosity</u>: The proposed Classes are so numerous that joinder of all members would be impractical. The Class Products are sold throughout the United States and the States of Illinois and California. The number of individuals who purchased Class Product during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

55.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

      (a)      Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Class Products;

      (b)      Whether Defendant's use of the challenged packaging, *i.e.*, the *Avocado Oil Representation*, constituted false or deceptive advertising;

      (c)      Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

      (d)      Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

      (e)      Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and if so, in what amount;

      (f)      Whether Plaintiffs and the Classes are entitled to statutory damages, and if so, in what amount; and

      (g)      Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

56.    Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Class Products. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of Class Products: (a) bears the same material *Avocado Oil Representation*, and (b) the Class Products do not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

57.    <u>Superiority</u>: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis.

Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

58.     <u>Typicality</u>: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

59.     <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their counsel.

60.     Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**COUNT I**
**Violation Of Illinois Consumer Fraud Act,** §§ **815 ILCS 505/1,** *et seq*
(*For the Illinois Subclass*)

61.     Plaintiffs hereby incorporate by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

62.     Plaintiff Dawar brings this claim individually and on behalf of the members of the proposed Illinois Subclass against Defendant.

63.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

64.     Defendant intended that Plaintiff Dawar and each of the other members of the Illinois Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

65.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff Dawar and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

66.     In addition, Defendant's conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Fraud
### (*For all Classes*)

67.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

68.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

69.     Defendant affirmatively misrepresented to consumers that the Class Products were 100% avocado oil despite the fact the Class Products were adulterated with other oils and are not 100% avocado oil.

70.     The *Avocado Oil Representation* is material to a reasonable consumer because it relates to the quality, safety, utility, and healthfulness of the Class Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to oil that is consumed—*i.e.*, oil that is used for cooking or consumed raw.

71.     At all relevant times, Defendant knew that the *Avocado Oil Representation* was misleading. Defendant intends for Plaintiffs and other consumers to rely on the *Avocado Oil*

*Representation*, as evidenced by Defendant intentionally and conspicuously placing it on the packaging of the Class Products. In the alternative, Defendant acted recklessly in making the *Avocado Oil Representation* without regard to the truth.

72.     Plaintiffs and members of the proposed Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations (*i.e.*, the *Avocado Oil Representation*) when purchasing the Class Products, and had the correct facts been known, would not have purchased them at the prices at which they were sold in the market, or would not have purchased them at all.

73.     Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the price premium for the Class Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT III
### Violation of California's False Advertising Law
### Bus. & Prof. Code §§ 17500 & 17501 *et seq.*
### (*For the California Subclass*)

74.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

75.     Plaintiff Morrison brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

76.     Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

77.     Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and the Subclass.

78.     As alleged in detail above, Defendant falsely advertised the Class Products by falsely representing that the Class Products are unadulterated avocado oil. It did this by prominently labeling the product "100% Pure" avocado oil. It also did this by listing only "Avocado Oil" in the ingredient list.

79.     Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and other reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

80.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Class Products. Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

81.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

82.     Plaintiff Morrison and the Subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Class Products if they had known that the Class Products are adulterated and contaminated with different oils, and (b) they overpaid for the Class Products because they were sold at a price premium due to the representation.

**COUNT IV**
**Violation of California's Consumer Legal Remedies Act**
**Bus. & Prof. Code § 1750, *et seq.***
**(*For the California Subclass*)**

83.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

84.     Plaintiff Morrison brings this claim individually and on behalf of the members of

the proposed California Subclass against Defendant.

85.     Plaintiff and the Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

86.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

87.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

88.     As alleged more fully above, Defendant has violated the CLRA by falsely representing that Class Products contain only avocado oil and are "100% Pure" avocado oil, when in fact the Class Products are adulterated and contaminated with different oils or substances. Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

89.     Defendant violated, and continues to violate, Section 1770(a)(5) of the California Civil Code by representing that goods have "characteristics, ingredients, uses, benefits, or quantities which they do not have." Defendant represents that the Class Products have the characteristic of being "100% Pure" avocado oil and free from adulteration, when in reality they are adulterated and mixed or substituted with different oils. Defendant represents that the Class Product contains only avocado oil, when in fact it is adulterated with other oils.

90.     Defendant violated, and continues to violate, Section 1770(a)(7) of the California Civil Code by "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are another." Defendant represents that the Class Products meet the standard of containing only "100% Pure" avocado oil, when in reality they are adulterated and mixed or

substituted with different oils. Defendant represents that the Class Products contain only avocado oil, when in fact they are adulterated with other oils.

91.     Defendant violated, and continues to violate, Section 1770(a)(9) of the California Civil Code by advertising "goods…with intent not to sell them as advertised." Defendant advertises that the Class Products are "100% Pure" avocado oil and free from adulteration, when in reality they are adulterated and mixed or substituted with different oils. Defendant advertises that the Class Products contain only avocado oil, when in fact they are adulterated with other oils.

92.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

93.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Class Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

94.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Class Products.

95.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Subclass.

96.     Plaintiff and the Subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Class Products if they had known that the Class Products were adulterated and contaminated with different oils or substances, and (b) they overpaid for the Class Products because they were sold at a price premium due to the representation.

97.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff Morrison, on behalf of herself and all other members of the Subclass, seeks injunctive relief.

98.     CLRA § 1782 NOTICE. On September 13, 2024, a CLRA demand letter was sent to Defendant's California registered agent and New York headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Because Defendant did not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt of the letter, Plaintiff and the California Subclass seek all monetary relief allowed under the CLRA.

### COUNT V
**Violation of California's Unfair Competition Law**
**Bus. & Prof. Code § 17200, *et seq.***
**(*For the California Subclass*)**

99.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiff Morrison brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

101.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong.*

102.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

*The Fraudulent Prong.*

103.    As alleged in detail above, Defendant's representations that the Class Products contained only avocado oil and were "100% Pure" avocado oil were false and misleading. Its labeling is likely to deceive, and did deceive, Plaintiff and other reasonable consumers.

***The Unfair Prong.***

104.    Defendant's conduct, as detailed above, also violated the "unfair" prong of the UCL.

105.    Defendant's conduct caused substantial injury to Plaintiff and Subclass members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Inaccurately labeled avocado oil has no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

106.    Plaintiff and the Subclass could not have reasonably avoided this injury. As alleged above, Defendant's labeling is false and misleading. Its labeling is likely to deceive, and did deceive reasonable consumers like Plaintiff.

107.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

108.    Defendant's conduct violated the public policy against false and misleading labels, which is tethered to the CLRA and the FAL.

109.    For all prongs, Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Class Products. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Class Products.

110.    Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of Subclass members.

111.    Plaintiff Morrison and the Subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Class Products if they

had known that the Class Products were adulterated and contaminated with different oils, and (b) they overpaid for the Class Products because they were sold at a price premium due to the representation.

**COUNT VI**
**Breach of Express Warranty**
**(*For the Nationwide and California Subclass*)**

112.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

113.    Plaintiff Morrison brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Subclass against Defendant.

114.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Class Products, issued material, written warranties by representing that the Class Products contain only "Avocado Oil," and contain "100% Pure" avocado oil. These were affirmations of fact about the Class Products (i.e., that they contained only avocado oil and that the oil was 100% avocado oil) and a promise relating to the goods.

115.    This warranty was part of the basis of the bargain and Plaintiff and class members relied on this warranty.

116.    In fact, the Class Products do not conform to the above-referenced representation because, as alleged in detail above, Defendant's labeling is inaccurate and the Class Products have been shown to be adulterated and contaminated with different oils. It is not "100% Pure" avocado oil. Thus, the warranty was breached.

117.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on September 13, 2024.

118.    Plaintiff Morrison, the Class, and the Subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Class

24

Products if they had known that the Class Products were adulterated and contaminated with different oils, and (b) they overpaid for the Class Products because they were sold at a price premium due to the representation.

**COUNT VII**
**Negligent Misrepresentation**
(***For the California Subclass***)

119.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

120.    Plaintiff Morrison brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

121.    As alleged more fully above, Defendant made false representations to Plaintiff and Subclass members concerning its statements that the Class Products contain only avocado oil, and that they contain "100% Pure" avocado oil.

122.    These representations were false.

123.    When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

124.    Defendant intended that Plaintiff and Subclass members rely on these representations, and Plaintiff and class members read and reasonably relied on them.

125.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Class Products.

126.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

127.    Plaintiff Morrison and the Subclass were injured as a direct and proximate result

of Defendant's conduct because: (a) they would not have purchased the Class Products if they had known that the Class Products were adulterated and contaminated with different oils or substances, and (b) they overpaid for the Class Products because they were sold at a price premium due to the representation.

<u>COUNT VIII</u>
**Intentional Misrepresentation**
**(*For the Nationwide Class and California Subclass*)**

128.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

129.    Plaintiff Morrison brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Subclass against Defendant.

130.    As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the Class Products contained only avocado oil, and "100% Pure" avocado oil.

131.    These representations were false.

132.    When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

133.    Defendant intended that Plaintiff and Class members rely on these representations, and Plaintiff, Class members, and Subclass members read and reasonably relied on them.

134.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Class Products.

135.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

136.    Plaintiff Morrison, the Class, and Subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Class Products if they had known that the Class Products were adulterated and contaminated with different oils, and (b) they overpaid for the Class Products because they were sold at a price premium due to the representation.

## COUNT IX
### Quasi-Contract
### (*For the Nationwide Class*)

137.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

138.    Plaintiff Morrison brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Subclass against Defendant.

139.    As alleged in detail above, Defendant's false and misleading representations caused Plaintiff and the class to pay a price premium for the Class Products.

140.    In this way, Defendant received a direct and unjust benefit, at the expense of Plaintiff and the Class.

141.    Plaintiff Morrison and the Class seek the equitable return of this unjust benefit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs individually and on behalf of the proposed Classes, respectfully seek judgment against Defendant as follows:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel; Certifying the Nationwide Class, the Illinois Subclass, and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Dawar as representative of the Class and Illinois Subclass and Plaintiff Morrison as representative of the Class and California Subclass, and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

B.     A declaration that Defendant's actions, as described herein, violate the laws described herein;

C.     Finding in favor of Plaintiffs, the Nationwide Class, the Illinois Subclass, and the California Subclass against Defendant on all counts asserted herein;

D.     An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.     An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.     An award of punitive damages, statutory damages, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

G.     An award to Plaintiffs and their counsel of reasonable expenses and attorneys' fees;

H.     An award to Plaintiffs and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.     For such further relief that the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  June 2, 2025                       Respectfully submitted,

                                           **SMITH KRIVOSHEY, PC**

                                           By:     _/s/ Brittany S. Scott_
                                                   Brittany S. Scott

                                           Yeremey O. Krivoshey*
                                           Brittany S. Scott*
                                           166 Geary Street, Ste. 1500-1507
                                           San Francisco, CA 94108
                                           Phone: 415-839-7000
                                           E-Mail:  yeremey@skclassactions.com
                                                    brittany@skclassactions.com

                                           **SMITH KRIVOSHEY, PC**
                                           Joel D. Smith*
                                           867 Boylston Street, 5th Floor, Ste. 1520
                                           Boston, MA 02116
                                           Phone: 617-377-7404
                                           E-Mail:  joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant*
1990 N. California Blvd., 9th Floor
Walnut Creek, CA 94596
Tel:  (925) 300-4455
Fax: (925) 407-2700
Email: ndeckant@bursor.com

**FARUQI & FARUQI, LLP**
Timothy J. Peter*
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Phone: (267) 536-2145
E-Mail: tpeter@faruqilaw.com

*Generally Admitted*

*Attorneys for Plaintiffs*