UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAJAT DAWAR and EBONY MORRISON, *individually and on behalf of all others similarly situated,*<br>　　　　Plaintiffs<br><br>　　v.<br><br>SOVENA USA, INC.,<br>　　　　Defendant | No. 24 CV 9106<br><br>Judge Jeremy C. Daniel |

**ORDER**

The defendant's motion to dismiss [56] is denied. The defendant shall answer the plaintiffs' complaint on or before September 19, 2025. The September 4, 2025, status hearing is stricken.

**STATEMENT**

This is a putative class action brought by plaintiffs Rajat Dawar and Ebony Morrison, seeking to represent a class of all persons who purchased the defendant's, Sovena USA, Inc., Olivari brand avocado oil. (R. 46 ¶¶ 1–3).[1] The plaintiffs allege this oil is falsely and deceptively labelled as "100% pure cold pressed avocado oil." (*Id*. ¶ 21.)[2] On January 11, 2024, Dawar purchased a bottle of Olivari brand avocado oil from a Sam's Club in Northfield, Illinois. (*Id*. ¶ 8.) He pleads that he believed he was purchasing a bottle of 100% avocado oil, relying on the product's label, and that if he had known the bottle was not entirely avocado oil, he either would have not purchased the bottle or paid less for it. (*Id*. ¶ 8) Similarly, on June 23, 2024, Morrison purchased a bottle of Olivari avocado oil from a Sam's Club in Long Beach, California. (*Id*. ¶ 11.) She also pleads that she relied on the bottle's labelling that it was 100%

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] For purposes of the pending motions, the Court accepts all of the plaintiffs' factual allegations as true and draws all reasonable inferences in their favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

avocado oil and asserts that if she had known the bottle was not entirely avocado oil, she either would have not purchased the bottle or paid less for it. (*Id*.)

The plaintiffs assert that their bottles of avocado oil are not 100% avocado oil, but instead are avocado oil mixed with other, less desirable, cooking oils. (*Id*. ¶ 25.) They came to this conclusion based on two sources. First, they cite a Washington Post article from August 2024, which reported on a 2021 UC Davis study which found that approximately two-thirds of tested avocado oils, including the defendant's, were not pure avocado oil. (*Id*. ¶¶ 41–48; R. 56-3.)[3] Second, the plaintiffs report they sent samples of the defendant's avocado oil to an independent lab, which tested the oil and concluded it was not pure avocado oil. (R. 46 ¶¶ 39–40.)

Both the 2021 study and the independent laboratory testing used fatty acid "fingerprinting" to tell whether a given oil was pure avocado oil or not. (*Id*. ¶¶ 39, 48.) Cooking oils, such as avocado oil, contain different types of fatty acids in various ratios that are unique to a particular type of oil. (*Id*. ¶¶ 30–32.) These ratios can be used to identify different types of cooking oils, and are codified in the Codex Alimentarius ("Codex") published by the Food and Agriculture Organization of the United Nations ("FAO"), an international standards setting body. (*Id*.) A standard fingerprint for avocado oil was adopted on November 30, 2024. (*Id*. ¶ 37.)

The plaintiffs seek to represent a nationwide class alongside California and Illinois subclasses, consisting of anyone who purchased Olivari avocado oil. (*Id*. ¶ 49.) They bring nine counts: violation of the Illinois Consumer Fraud Act, ("ICFA"), 815 ILCS 505/1, *et seq.,* (Count I), fraud, (Count II), violations of California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500 & 17501 *et seq.*, (Count III), violation of California's Consumer Legal Remedies Act ("CLRA"), Bus. & Prof. Code § 1750, *et seq.*, (Count IV), violation of California's Unfair Competition Law, ("UCL"), Bus. & Prof. Code § 17200, *et seq.*, (Count V), breach of express warranty, (Count VI), negligent misrepresentation, (Count VII), intentional misrepresentation, (Count VIII), and a quasi-contract claim, (Count IX). (*Id*. ¶¶ 61–141.)

The defendant moves to dismiss all nine claims, arguing that the plaintiffs failed to plead that the products they purchased are anything other than pure avocado oil. (R. 56-1 at 6.) The defendant also argues that the plaintiffs' fraud claims are not pled with the required particularity under Rule 9(b). (*Id*. at 14) Last, the defendant argues that Counts I, III–V, and VII fail for reasons specific to those individual claims. (*Id*.) According to the defendant, Count I fails to allege actual damages, the plaintiffs lack standing for Counts III–V, and Count VII is barred by the economic loss doctrine. (*Id*. at 22–25)

---

[3] The Court may consider both the Washington Post article and the UC Davis study because they are referenced in and central to the Second Amended Complaint. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raises the right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *In re Abbott Labs. Derivative S'holder Litig.*, 325 F.3d 795, 803 (7th Cir. 2003).

Fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to state the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b); *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (citation omitted). To comply with Rule 9(b), a plaintiff must describe the "'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Id.* (citation omitted). While plaintiffs must "use some means of injecting precision and some measure of substantiation," "the precise details that must be included in a complaint may vary on the facts of a given case." *United States ex rel. Presser v. Acacia 8 Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (cleaned up); *accord AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

The Court starts with whether the plaintiffs have adequately pled that the defendant's avocado oil is not 100% pure avocado oil. The Court agrees with the defendant that neither the UC Davis study nor the Washington Post article plausibly support the plaintiffs' allegations. These tests took place in 2020 or 2021, while the plaintiffs bought their oil in 2024. (R. 46 ¶¶ 8, 11; R. 56-3.) This is simply too much time between the test and the purchases to support the inference that the avocado oil the plaintiffs purchased was not pure. Fortunately for the plaintiffs, they have adequate support for their claims in the form of contemporaneous testing done on the at-issue oil. (R. 46 ¶¶ 39–40.) The defendant objects that the level of detail provided about this third-party testing is insufficient. (R. 56-1 at 20.) The Court disagrees. The plaintiffs plead that samples of the defendant's products were tested against a fatty acid fingerprint unique to avocado oil, and did not match the fingerprint. (R. 46 ¶¶ 31, 39–40.) This suffices to state a plausible claim that the avocado oil purchased in 2024 was not 100% pure as labelled.

The level of detail provided in the complaint also suffices to plead a case for fraud with the required degree of particularity. The plaintiffs allege that the defendant is selling a mixture of avocado oil and inferior oils as "100% pure cold pressed avocado oil." (*Id.* ¶ 21.) The plaintiffs allege they know this because they tested the defendant's oil and obtained results only possible if the oil was not 100% pure. (R. 46 ¶¶ 31, 39–40.) The defendant suggests that these results could plausibly be the result of batch-to-batch variation, (R. 56-1 at 22), but that is not what the plaintiffs pled. And, even

if that is a plausible explanation, the Court must draw inferences in the plaintiffs' favor, not to their detriment. *In re Abbott Labs.*, 325 F.3d at 803. The specificity alleged regarding the plaintiffs' testing makes this case different from the cases cited by the defendant, where the testing was not alleged to be reliably indicative of mislabeled product. *See Henry's Bullfrog Bees v. Sunland Trading, Inc.*, No. 2:21 C 582, 2024 WL 4190090, at *7 (E.D. Cal. Sept. 13, 2024) (insufficient details as to which supplier's honey was adulterated); *Scheibe v. Performance Enhancing Supplements, LLC*, No. 3:23 C 219, 2023 WL 3829694, at *3 (S.D. Cal. June 5, 2023) ("[the defendant] is left to guess" what testing was carried out). Here, the plaintiffs are explicit about what was tested (the defendant's avocado oil), by what yardstick it was judged (fatty acid fingerprint), and the results (avocado oil mixed with other oils). (R. 46 ¶¶ 31, 39–40.) This suffices to state a fraud claim.

The defendant also argues that the fraud claim fails because the plaintiffs do not allege scienter. (R. 56-1 at 22.) Not so. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The plaintiffs allege that the defendant labels and sells a mixture of different oils as 100% pure avocado oil, and that the defendant is "directly involved in the manufacturing, sale, and distribution of [the avocado oil], and is responsible for the advertising, marketing, trade dress, and packaging of the [the avocado oil]." (R. 46 ¶ 19.) The reasonable inference to draw is that the defendant knows it is selling impure oil, and is the actor mixing up the impure oil for sale. This suffices to state a fraud claim at this stage in the proceedings.

**Count I—ICFA**

The defendant next argues that Count I, under the ICFA, should be dismissed because it does not allege a scienter requirement, and fails to allege actual damages. (R. 56-1 at 22–23.) However, as the plaintiffs argue, the ICFA has been amended and no longer has a scienter requirement. *Kahn v. Walmart Inc.*, 107 F.4th 585, 603 (7th Cir. 2024). And, all that is required to plead loss under the ICFA is pleading the product was defective or worth less than what the plaintiff paid. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019). Here, Dawar pled that the oil he purchased in Illinois was defective (because it was not 100% avocado oil) and he would have paid less for the oil had he known that. (R. 46 ¶ 8.) Therefore, he has alleged a claim under the ICFA and the Court will not dismiss Count I.

**Counts III, IV, and V—Standing Under the FAL, CLRA, and UCL**

The defendant argues that the plaintiffs do not have standing under to assert these California statues. The core of its argument is that "without any factual allegations to support the claim that the Avocado Oil was not pure, [the plaintiffs] fail to show

4

any actual injury." (R. 56-1 at 24.) The Court, having already found that the plaintiffs have adequately alleged that the avocado oil was not pure, rejects this argument.

**Count VII—Negligent Misrepresentation**

The defendant moves to dismiss Count VII, for negligent misrepresentation, arguing that the economic loss doctrine bars the plaintiffs' claims. (R. 56-1 at 25.) This claim is asserted only on behalf of the California subclass, and so the parties apply California law. (R. 46 ¶ 120.) In California, economic loss is not a bar to a negligent misrepresentation claim that "sounds in fraud." *See Steiner v. Vi-Jon Inc.,* 723 F. Supp. 3d 784, 796 (N.D. Cal. 2024); *Banks v. R.C. Bigelow, Inc.,* 536 F. Supp. 3d 640, 649 n.1 (C.D. Cal. 2021). Accordingly, the Court will not dismiss Count VII.

Date: August 29, 2025

JEREMY C. DANIEL
United States District Judge

5